Dresbach, J.
This ease is submitted to the count upon a general demurrer to both the first .and second oauses .of .action of the petition.
The plaintiff for his first cause of action alleges that, prior to August 22, 1904, to-wit, on or about .the - day of April, 1904, he w,as duly and regularly employed by the board of education of Muhlenberg township, Pickaway county, the defendant herein, .and then entered into .a contract with said board for his services as a teacher in one of the common schools of said town *527 ship, to-wit, in subdistrict No. 3, to teach said school for the term of .eight months, which said term of employment was to begin on September 19, 1901; that .at the date of said employment and at the dates hereinafter mentioned he held a certificate as such teacher for the common schools of said county, which had been duly granted and issued by the board of school examiners of said county; that afterwards, to-wit, from August 22, 1901, to August 26, 1901, both dates inclusive, a teachers’ institute was duly held in said county of Pickaway, at the city of Cireleville, and that he, the said plaintiff, was in full, regular daily attendance at all of the sessions thereof for the period of five days, to-wit, the twenty-second, twenty-third, twenty-fourth, twenty-fifth and twenty-sixth days of August, 1901.
The plaintiff further -avers that under and by the terms of his employment and contract with said board of education for his services .as such teacher during said term of employment he was to receive the -sum of $15 per month, or at the rate -of $2.25 a day during said term.
The plaintiff further -avers that afterwards, to-wit, on September 19, 1901, he commenced teaching said school under his said employment and continued to teach for -the period of said term, ending on May 10, 1905; that afterwards, to-wit, on October 15, 1901, he duly presented to the. said board of education a certificate of full, regular daily attendance at said institute, signed by the .president and secretary thereof, and then requested said board to pay him the sum of $11.25 as so much salary due him for said attendance on said institute, as an addition to the firs-t month’s salary so due him for his -services as such teacher under his -said .employment and under the law in such eases made and provided, but he avers that the said board of education refused to pay the same or to grant him an order for the payment thereof, upon the sole ground that the said board had no authority under and by virtue -of the statute in -such eases made and provided, and especially under and by virtue of Section 1091, Revised Statutes, under which statute said plaintiff claimed said compensation, to allow or pay the same.
And for his second cause of action the plaintiff -alleges that on or about the --day of April, 1901, he was duly .and regu *528 larly employed by the board of education of Muhlenberg township, Pickaway county, Ohio, the defendant herein, and then entered into a contract with said board for his services as a teacher in one of the common schools of said township, to-wit, in subdistrict No. 3, to teach said school for the term of eight months, which said term of employment was to begin on September 19, 1904; that afterwards, to-wit, on said September 19, 1904, under his said contract and employment he commenced teaching said school and continued to teach for the period of eight months, and until May 10, 1905; that during the period of his said employment, and while he was so teaching said school, he was obliged to, and did, do and caused to be done, the janitor work of said school room and building wherein he was teaching, the said board having made no provision therefor, and that said services were reasonably worth the sum of two dollars per month.
Plaintiff further avers that on or about May 13, 1905, he presented his bill to said board of education for the sum of $16 for said services and requested payment thereof; but the said board then refused and has ever since refused to pay him for said services or to issue an order for the same. lie avers that said services 'were reasonably worth the said sum of $16, and that said defendant is indebted to him therefor in said sum of money, with interest thereon from May 13, 1905,
This case is of unusual public interest and, so far as I am advised, the question made in the second cause of action has not been passed upon by any court of record in the state.
As the questions made in both of these causes of action turn upon a construction of certain statutes of this state, it may be well first to observe .the general rules which may aid in such construction. In Burgett v. Burgett, 1 Ohio, 469, decided in 1824, and which is the leading case in Ohio on the subject, the court on page 480 say;
“The intention of the lawmakers may be collected from the cause, or necessity of the act, and statutes are sometimes construed contrary to 'the literal meaning of the words.”
In the case of Teaff v. Hewill, 1 Ohio Sit., 511, the court on page 543 say:
*529 ‘ ‘ Courts are not to be confined, to the letter of the law in giving it a construction. The maxim, haeret in litera haeret jn cortice, is not to be forgotten. A statute must be construed with reference to the subject-matter of it, and its real object and true intent. ’ ’
In Slater v. Cave, 3 Ohio St., 80, the court on page 83 say:
“It is not necessary to refer to precedent to sustain the position that where the literal construction of a statute would lead to gross absurdity, or where, out of several acts touching the same subject-matter, there arise collaterally any absurd consequences, manifestly contradictory to common reason, the obvious intention of the law must prevail over a literal interpretation, and it is .even said that provisions leading to collateral consequences of great absurdity or injustice may be rejected as absolutely void.”
In Exchange Bank v. Hines, 3 Ohio St., 1, the subject-matter before the court was the new taxation statutes framed under the then hew Constitution, presenting questions of great importance, and the court, as an aid in determining those questions, carefully and fully reviewed and considered the history of the entire subject-matter to which the act applied, and the objects which the Legislature must have had in mind in enacting those statutes (see page 12 et seq.). To the same effect, see Cin., W. & Z. Ry. v. Clinton County, 1 Ohio St., 77 (opinion by Judge Ranney), and Lamb v. Lane, 4 Ohio St., 167 (opinion by Judge Thurman). On pages 176 and 177 Judge Thurman says:
‘ ‘ There is nothing in the grammatical construction of the section, nor anything .in reason or justice, that requires a more limited application; and it is certainly forbidden by a consideration of the old law and the evil which it is fair to presume the Constitution was intended to remedy.”
But it is unnecessary to multiply eases. This is a standard rule of construction. It is therefore apparent that it is our duty to look at the history of the subject-matter of these statutes and at the manifest public policy of .the state, as reflected in its Constitution .apd kindred legislation.
Section 7, Article I of the Constitution of this state provides:
*530 “It shall be -the duty of the General Assembly to pass suitable laws * * * to encourage schools and the means of instruction. ’ ’
And Section 2, Article VI, also provides:
“The General Assembly shall make such provisions, by taxation or otherwise, as with the income arising from the school trust fund will- secure a thorough and efficient system of common schools throughout the state.”
In the case- of State v. McCann, 21 Ohio St., 198, the court on page 205, in commenting and passing upon these constitutional provisions, say:
“It is left to the discretion of the General Assembly, in the exercise of the general legislative power conferred upon it, to determine what laws are ‘suitable’ to secure the organization and management of the contemplated system of common schools, ’ ’ etc.
See also Cincinnati v. Minor, 23 Ohio St., 211; Peters v. McWilliams, 36 Ohio St., 155, 161; Hall v. DeCuir, 95 U. S., 485, 504; Plessy v. Ferguson, 163 U. S., 537, 545. In the case of State v. Oglevee, 37 Ohio St., 1, the Legislature had given to the Ohio University at Athens $20,000 for .the purpose of repairing its buildings. This act and the judgment of the court in relation thereto clearly indicates the settled policy of the state on this subject.
The court says, page 5:
“In the judgment of the General Assembly this enactment was passed in .the discharge of the duty imposed upon it by Section 7, Article I of the Constitution; namely, -to pass suitable laws to encourage schools and the means of instruction. The Ohio University, an institution of learning, had no claim in .the nature of .a debt against the state for which payment was demanded; but, being without means to make necessary repairs upon the buildings of the university, she solicited aid from the state, which the General Assembly granted, not by way of paying a claim, but as giving generous .aid to a needy and worthy institution of learning. There is no constitutional objection to the statute.”
The examples which show this policy of the state are too numerous for extended mention. The state provides a generous *531 support to the Ohio State University, located at Columbus, and provides liberally for extended courses of instruction upon various scientific subjects, many of them connected with agriculture. By Section 4086, Revised Statutes, et seq., provision is made for county teachers’ institutes. In short, from the foundation of our government, state and national, the education of the people — the school system — has rightly been a matter of the deepest and most constant concern. The teachers are .employes and servants of the state under this system. That the state clearly recognizes the fact -that the mere payment of wages to teachers for .the time the schools- .are actually in session, does not fully discharge the debt and obligation of .the state to its teachers, is shown by Section 3897cl, Reivsed Statutes, and following, which provides ,a system for the payment of pensions to the teachers of the state, under certain conditions therein stipulated. Other instances of recognition of this obligation, like Sections 4015, 4016, Revised Statutes, and others, might be cited, but these are sufficient. They clearly indicate a general legislative policy, spirit and intention which can not be ignored by the courts in construing- these statutes. They indicate a consistent public policy of the state, and the history of -those -acts show that that policy has been progressive.
We now take up the first cause of action. This involves a construction of Section 4091, Revised Statutes, as amended April 25, 1904 (97 O. L., 377), which reads as follows:
“All teachers of the public schools within any county in which a county institute is held may dismiss their schools for one week for the purpose of .attending such institute, and when such institute is held while the schools are in session the boards of .education of all school districts are required to pay -the teachers of their respective districts -their regular salary for the week they attend the institute upon the teachers’ .presenting a certificate of full, regular daily .attendance at said institute signed by the president and secretary thereof; the same to be paid as an addition to the first month’s salary after said institute by the board of .education by -which said teacher is then employed, or in case he is unemployed at the time of the institute, then by the board next emplojdng said -teacher, provided the term of said employment begins within three' months after said institute closes.”
*532 If the plaintiff haid been actually engaged in teaching at the time this institute was held, so that he could have dismissed his school to attend it, no one disputes that he would be entitled to pay; but because the teachers, by their own action, wisely provide for holding this institute during vacation, it .is contended that they are not entitled to pay, except perhaps under limited construction which I shall hereafter call attention to. It is clearly to the interest of the state not to have the work of the school year interrupted by a dismissal in .order that teachers may attend this institute. The cost to the state will not be increased by holding the institute in vacation. Could the Legislature have intended that this statute should bear a construction which puts a premium upon such interruption of the school work, and one which would so discourage a conscientious performance of duty ?
Now it is urged against this cause of action that no pay can be given to a teacher who is under contract of employment at the time the institute is held, although, if he was not then under contract, but afterwards made such .contract, and within three months b.egan teaching, he would be entitled to pay. We must take judicial notice of the fact that these -institutes are almost universally held in August, and that the teachers are almost all hired for the next year before that time, namely, in May or June. The Legislature must be -presumed to have known these facts which -are common knowledge, and which under the rules already quoted we are bound to notice judicially and to presume that the Legislature knew. Then why presume that the Legislature intended to offer a premium to the teacher who is so negligent or incompetent that he does not, or can not, secure a school, until three months or more after all such .places should be .and usually are filled?
The last clause of the act is said to have also received this construction:
“Now, this part of the section clearly means that if a teacher ■attends an institute held while the schools are in session, but he is not engaged in teaching at that time, but during that school year, and within three months after such institute closes, he takes -the place of some other teacher and begins to -teach a *533 school, then the board which so employs him is required to pay him for his attendance at the institute.”
With all respect, I suggest, would not this construction result in the state having .to pay -twice for the same current service of benefit, in this, -that the teacher -then -engaged in teaching a given school, when the 'institute is held, would be -entitled to pay, and then, his successor, who -took his place, at any time within three months, would also -be entitled to -pay? Why presume these distinctions, when they seem so -contrary to any reason which can be conceived for the distinction? It is clear to me that so to construe the act is to do violence to legislative intention, -as indicated by -all of the considerations to which I have referred. In my judgment the Legislature intended to provide for two very simple and proper conditions:
First. Pay for the teacher who is actually engaged in teaching when the time to attend this institute -arrives.
Second. Pay for all other teachers, subject, however, to the limitation that they must begin teaching some public school in this state within three mouths -after the institute closes.
This limitation is added because of the -necessity of having some designation, or definition of the persons to whom the act applies. T-o simply use -the word “teacher” is too broad. Plainly the Legislature intended -to limit the act to active teachers, those actually and actively engaged in the profession. It is clear that some definition -or description of the class to whom the act was -to apply w.as' necessary, -and in my judgment the, perhaps, rather unhappy phraseology -and method of accomplishing that purpose used in the -act has given rise to all of this confusion.
It is unsafe to attempt ito solve this question by regarding only -the standard -and usual -definition of the words “unemployed,” “-employing” and “employment,” as used in this last clause of the -act, viz.: “Or in ease he is unemployed at the time of the institute, then .by the -board next employing said teacher, provided the term of said -employment begins within three months after said institute closes.”
The real question is, In what sense has the Legislature used these words her-e ? I am clear .that it is not in -the sense of under *534 contract of employment. If -the words need any definition at all I would read “employed” in the sense of actually engaged in teaching. As said by Judge Ranney in Exchange Bank v. Hines, supra, page 53:
“The great object of all construction is to arrive at the intention and purpose of the lawmaker. This is never to be lost sight of, and will always control the strict letter of the law, when, by adhering to that, its great leading purpose would be defeated. ’ ’
And, on page 61 of that case Judge Ranney quotes with approval the language of Lord Erskine:
“Where the strict letter of .the law is contrary'to its spirit, or to equity, judges ought not so much to regard the proper or received signification of the words, as that meaning which appears most consonant to the designs of the law.”
Extended quotation might be made from many cases in this state laying down the same rules, and furnishing strong examples of its application. I content myself with simply citing a few of these which are particularly to the point. Burt v. Rattle, 31 Ohio St., 116, 128, 129; Board of Education v. Board of Ed., 46 Ohio St., 595, 600, 601; Johnson v. State, 42 Ohio St., 207, 210; Hogg v. Manufacturing Co., 5 Ohio, 410; McCormick v. Alexander, 2 Ohio, 65, 74.
I come now to the second cause of action which, in my judgment, presents a question of much greater interest and difficulty. It involves a construction of the last clause of Section 4018, Revised Statutes, as amended April 25, 1904 (97 O. L., 363). The entire section reads as follows:
“All teachers shall exercise reasonable care in regard to all school property, apparatus and supplies entrusted to their keeping. They shall strive to guard the health and physical welfare of the pupils in their schools, give efficient instruction in the studies pursued, and endeavor to maintain and preserve good discipline over all the pupils under their charge. Provided, however, that no teacher shall be required by any board to do the janitor work of any school room or building, except as mutually agreed by special contract, and for compensation in addition to that received by him for services as teacher.”
*535 In addition to (the matters to which I have already- called attention, indicating the policy of the state, it is proper, and in my judgment quite important, to inquire as to the legal status of the teacher in this state. Is the relation between the state and teacher, or between the board and -the teacher, that of an ordinary employer and employe? Is -that relation, whatever it may be, between the state and teacher subject to all of the ordinary laws of -contract, as fully as in ordinary private employment? In my judgment the correct answer -to that question suggests the solution to this second cause of .action. The relation of the teacher to -the state is not that of the ordinary employe in private life. The reason for the -difference, too, is apparent. The -state can act only through its own subordinate agencies which it has created and calls boards of education. Much confusion arises from assuming that boards of .education -are in effect ■the state, instead of appreciating that they are simply agents of the state, and moreover agents of limited and prescribed powers. The state has found it just as necessary and important to impose restriction upon its servant, the board of education, as it has upon its servant, -the teacher. It requires a careful examination of the entire school code to appreciate this fully. Rules for the regulation of the board, and by which its conduct must be squared in order that its actions may be legal, are fully as numerous -as -those for the teacher. I quote a part of Section 4017, Revised Statutes, 97 O. L., 361, as illustrative of what I have just said:
“And each board shall fix the salaries of all teachers, which salaries may be increased, but shall not be diminished during the term for which the appointment is made, and teachers shall be paid for all time lost when the schools in which they are employed -are closed owing to -an epidemic or other public calamity, but no person shall be appointed as a teacher for a term longer than four school years, nor for a less term than one year except to fill an un-expired term, the term to begin within four months of the date -of the appointment, provided that in making appointments teachers in the actual employ of the board shall be first considered before new teachers are chosen in thier stead.”
Again, from the same section (97 O. L., 362) :
*536 “Ail resignations or requests for release from contract by teachers, superintendents, or employes, shall be promptly considered bj the board, but no resignation or release shall become effective except by consent of the board. Each board may dismiss any appointee or teacher for inefficiency, neglect of duty, immorality, or improper conduct; butt no teacher shall be dismissed by any board unless the charges are first reduced to writing and an opportunity be given for defense before-the board, or a committee thereof, and a majority of the full membership of the board vote upon roll call in favor of such dismissal. ’ ’
By the language just quoted it will be perceived that the board can remove a teacher only after a fair trial upon written charges. But more significant than any other provision of the law is the provision of Section 4019, Revised Statutes, which reads as follows:
“If -the board of education of any district dismiss any teacher for any frivolous or insufficient reason, such teacher may bring suit against such district, and if on the trial of the cause a judgment be obtained against the district, the board thereof shall direct the clerk to issue an order upon the treasurer for the sum so found due to the person entitled thereto, to pay the same out of any money in his hands belonging to such district, and applicable to the payment of teachers; and in such suits process may be served on the clerk of the district, and service upon him shall be sufficient.”
By this section an effective method of appeal to the courts is provided for, to protect the teacher against injustice at the hands of the board. Now bear in mind that while the board is authorized, subject to the provisions of the statutes, to “appoint” the teacher to the “position” of teacher and to fix the salary of the teacher, yet it is not the money of the board which is paid to the teacher. It is the money of the state, or the people at large, and the board therefore is not endowed with an unlimited discretion to pay or withhold pay for janitor work at its pleasure. The language of the state, speaking through the Legislature, to the board of education is mandatory.
Under the authorities which I have already cited, it is the duty of the court, in seeking the legislative intention as expressed in this statute, to give due consideration to the hardships from *537 which this provision was intended to relieve the teachers of the state. From the organization of the schools, the teachers in the country districts were largely required tó do their own janitor work At .an early day, it was not usual to'employ female teachers during the winter months in these country districts; so that it was not often that the labor and exposure of making morning fires during cold, stormy weather, and of sweeping and dusting a school house, fell upon delicate, young women. But there has been a great change in that regard, and now a very large per cent, of the country teachers, during both winter and summer months, are ladies. In my judgment this provision of the statute is .the legistative response to this change in conditions.
It is not the especial province of the courts either to approve or condemn the policy of a valid legislative enactment, but I can not omit the expression of unqualified approval of the wisdom, justice and humanity of .this statute, as it must apply to the young womanhood of this state, in mitigating the hardships of a notoriously underpaid profession — a profession having more to do with the future welfare of the state than most people stop to consider. And the fact that the act must apply to all teachers .alike — male as well as female — in order that it may no.t be special legislation, is no' reasonable objection to the policy of this statute.
I therefore conclude that .the duty enjoined by this statute upon the board is not one which it may lawfully ignore. In my judgment, under our system of pleading, it is not necessary, in order to sustain this cause of action, that the courts should be able accurately to place it in some heretofore recognized classification. But, even if that were true, I am clear .that .the right may be properly, and even .accurately classified, as arising under what is called a quasi contract; that is to say, the law creates the obligation, and the courts, as a mere matter of. convenience, simply use a remedy, as upon contract, in enforcing it. Judge Tvn-ng'ha.n clearly distinguishes and defines this class of so-called contracts in his valuable opinion in Columbus, H. V. & T. Ry. v. Gaffney, 65 Ohio St., 104, 114. See also 3 Am. & Eng. Enc. Law (1st Ed.), 860; Keener, Quasi-Contracts, Chap. 1; Beach, Contracts, Section 640, p. 773. Keener, on page 16, says that *538 such an obligation (so-called quasi contract) arises: “2. Upon a statutory * * * .duty.”
Abernathy & Folsom, for plaintiff.
Charles Gerhard, Prosecuting Attorney, contra.
It seems to me that this .principle is clear: for example, by statute it is made the duty of the father to support his infant child. One who furnishes that child with necessaries, if the father has failed to do so, may recover in an action ex contractu. And it is no answer that such plaintiff was a mere volunteer in furnishing such necessaries. This clearly shows that it is no answer to say in the ease at bar that the plaintiff voluntarily did this work, and therefore can not recover; although, in my judgment, it is not an accurate statement to call the plaintiff here a volunteer. This statute prohibits the board from requiring the teacher to do this janitor work, “except as mutually agreed by special contract, and for compensation in addition to that received by him for his services as teacher.” Yet this board ignored the statute and did, in effect, require the teacher to do the work; required if in the sense that he could not conduct his school without ñre, and other work which clearly comes within that definition.. Is the teacher, in such case, without a remedy? If he is, then the Legislature passed this statute in vain. It is operative only when a board sees fit to make it so, notwithstanding the mandatory direction of this statute. If the board may lawfully ignore this provision of the statute law, why may they not lawfully ignore all other provisions of the law? To my mind Section 4019, Revised Statutes, .already quoted, clearly indicates, by analogy, the remedy open to the teacher, as well as indicating the legislative intention.
The demurrer to both the first and second causes of action of this petition is overruled.